COPY

STYLE OF
CASE: ROY MAYNOR
vs.
THE DOW CHEMICAL
COMPANY

CASE NO.: 3:07-CV-00504

PERTAIN TO: Exhibit 'A'

FROM: International Union of Operating Engineers / Local Union No. 564
Any & All Records

DELIVER TO: Mr. Mark Siurek
Warren & Siurek, L.L.P.
3355 West Alabama, Suite 1010
Houston, TX 77098

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

# Continental
## Court Reporters, Inc.

*Reporting • Video • Records*

Attachment A1

| Houston/Galveston | Austin/San Antonio | Dallas/Fort Worth |
|---|---|---|
| 2777 Allen Parkway | 504 Lavaca Street | 1412 Main Street |
| Suite 600 | Suite 980 | Suite 900 |
| Houston, Texas 77019 | Austin, Texas 78701 | Dallas, Texas 75202 |
| (713) 522-5080 | (512) 479-7771 | (214) 742-4949 |
| Fax (713) 522-0440 | Fax (512) 472-1992 | Fax (214) 742-2510 |

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

ROY MAYNOR             :
                       :
                       :
vs.                    :      CIVIL ACTION NO. 3:07-CV-00504
                       :
THE DOW CHEMICAL       :
COMPANY                :

## AMENDED
## DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS

Custodian of Records for: **International Union of Operating Engineers / Local Union No. 564**

Records Pertaining To: **Exhibit 'A'**

Type of Records: **See Exhibit 'A'**

1. Please state your full name and address where you reside.

   Answer: _Charlie Singleterary   205 South Martson West Columbia Tx 77486_

2. Please state by whom you are employed and the business address.

   Answer: _IUOE Local 564   121 Circle Way Ste A Lake Jackson Tx 77566_

3. What is the title of your position or job?

   Answer: _Business Manager_

4. What are you duties in connection with such employment?

   Answer: _Manage Union Labor Relations_

5. Are the records, memoranda or reports outlined in the subpoena duces tecum, pertaining to **Exhibit 'A'**, subject to your control, supervision, custody or direction?

   Answer: _Yes_

6. Are you able to identify these records as the originals or true and correct copies of the originals?

   Answer: _Yes_

7. Please provide all of such records, outlined in the subpoena duces tecum, to the Officer taking your deposition copies for inspection and/or photocopying. Have you complied? If not, why?

   Answer: _Yes_

8. Are the photostatic copies which you have provided to the Officer taking this deposition true and correct copies of such records?

   Answer: _Yes_

Order No. 01-17868-001

9. Are the originals of such records in the files of **International Union of Operating Engineers / Local Union No. 564**?

   Answer: _yes_

10. Are the originals of such records a permanent part of the records of **International Union of Operating Engineers / Local Union No. 564**?

    Answer: _yes_

11. Were such records, memoranda or reports kept in the regular course of business of **International Union of Operating Engineers / Local Union No. 564**?

    Answer: _yes_

12. Was it in the regular course of business of **International Union of Operating Engineers / Local Union No. 564** for secretaries, supervisors and other employees and representatives of **International Union of Operating Engineers / Local Union No. 564** with personal knowledge of the acts, events, conditions and other information contained in such records you have furnished to the Officer taking this deposition, to make such records or to transmit information pertaining thereto to be included in such records?

    Answer: _yes_

13. Were the entries in the records, memoranda or reports made by the secretaries, supervisors and other employees and representatives made at or near the time when the acts, events, conditions and other information contained therein occurred, were observed or rendered, or made reasonably thereafter:

    Answer: _yes_

    _____
    WITNESS (Custodian of Records)

Before me, the undersigned authority, on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument in the capacity therein stated, who being first duly sworn, stated upon his/her oath that the answers to the foregoing questions are true and correct. I further certify that the records attached hereto are exact duplicates of the original records.

SWORN TO AND SUBSCRIBED before me this _26_ day of _June_, 20_08_.

_____
NOTARY PUBLIC

My Commission Expires: _10-4-11_

[Notary seal: RHONDA TERRILL, My Commission Expires October 4, 2011]

Order No. 01-17868-001

FW: Skills Initiative Agreement                                                                 Page 1 of 1

### local564

| | |
|---|---|
| From: | Charlie Singletary [charlie564@sbcglobal.net] |
| Sent: | Monday, June 16, 2008 11:25 AM |
| To: | local564@sbcglobal.net |
| Subject: | FW: Skills Initiative Agreement |
| Importance: | High |

8/16/07

You will be receiving a payment from The Dow Chemical Company ("Dow") and we want to inform you of the purpose of the payment and give you some background on how the payment came to be made.

The U.S. Department of Labor ("DOL") recently completed a review of how Dow administered certain skills initiative training in the past. As a result of this review, Dow and the DOL have reached an agreement addressing the question of compensability of time that some employees spent on this training.

The skills initiative practice which was in question had been negotiated and agreed to by the Union and the Company in 2003. However, the DOL took the position that some of the employees' time in the training program was compensable under federal law. After numerous discussions, Dow has voluntarily reached an agreement with the DOL on this issue. While our company does not necessarily agree with the position taken by the DOL, we felt that it was in the best interests of all parties involved to reach an agreement as quickly as possible, in order to bring this matter to resolution.

As of November 30, 2006, ratification of the mid-term agreement, there are no 2 level requirements or potential discipline related to the skills initiative. This means that there are no ongoing skills initiative activities that would be compensable under DOL's position. Employees will continue to be paid for certain assessment activities.

The payment you will receive is based on an assessment of the time that you spent on compensable activities. Any questions related to this should be directed to Labor Relations.

Sincerely.

# Robin Campbell
Labor Relations Manager/Freeport HR SSL For Supply Chain
Texas Operations
B-120, Rm 135
Phone: 979-238-4771
Fax: 979-238-0657
Pager: 1-800-635-7819

3

# International Union of Operating Engineers

**LOCAL UNION NO. 564**

127 CIRCLE WAY, SUITE A
LAKE JACKSON, TEXAS 77566

local564@sbcglobal.net
OFFICE: (979) 480-0003
FAX:      (979) 480-0509

AFFILIATED WITH THE
AFL-CIO

September 6, 2006

Mr. Martin Barrow
District Director
U.S. Department of Labor
Houston District Office
8701 S. Gessner Drive, Suite 1164
Houston, TX 77074-2944

Re: Involuntary Training Program

Dear District Director Barrow:

On behalf of the approximately 958 hourly workers currently employed by Dow Chemical in Freeport, Texas, the International Union of Operating Engineers Local 564 requests that the Department of Labor investigate Dow Chemical's violation of the Fair Labor Standards Act by failing to compensate employees for time during which they are engaged in involuntary training programs.[1]

Attached hereto (Attachment A) is a list of the names of the employees who have involuntarily participated in Dow Chemical's training program. As set forth herein, Dow Chemical hourly workers are required to devote literally hundreds of hours for training to satisfy skills assessments mandated by the employer. The employees are entitled to compensation for study time, as well as time spent taking courses and tests. *See* WH Admin. Op. (Sept. 9, 1970), Wage & Hour Manual (BNA) 99:1034 (The Wage and Hour Division has held that telephone operators who were given a typing course should be compensated for time spent practicing typing at home. The Division reasoned that the home typing was required, not voluntary, because the failure to acquire a certain proficiency in typing would result in termination of employment.)

The mandatory courses and related testing are held at Brazosport College in Richwood, Texas. Dow Chemical pays the College to conduct the courses on its behalf.

Both long-term employees and new hires are required to attend the training program regardless of length of service and demonstrated ability to perform the job functions of the

---

[1] IUOE Local 564 is currently collecting information on Dow Chemical's failure to compensate for training workers who have recently retired, quit, or are no longer in positions represented by the IUOE Local 564. IUOE Local 564 intends to request that the DOL investigate Dow Chemical's violations of the FLSA with regard to these individuals.

19

**SENDER: COMPLETE THIS SECTION**
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Martin Barrou, Dist. Director
DOL - Houston Dist Office
8701 S. Gessner Dr
Suite 1164
Houston TX 77074

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X  B. [signature]   ☐ Agent  ☐ Addressee

B. Received by (Printed Name)  C. Date of Delivery
B. [illegible]   2.7.6

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered       ☒ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number (Transfer from service label)
7099 3400 0017 0941 0817

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

classifications held by the workers. The dates of seniority of the workers are included on Attachment A. Of approximately 958 hourly workers, a majority of whom are long-term workers with at least 15 years of seniority, only 15 workers have satisfied all requirements in the training program to date. As a consequence, except for these 15 workers, all workers are required to continue to train without compensation for training time in order to retain their employment.

The training program is not for the purpose of advancement or promotion to a higher paying or more skilled job; rather, the alleged purpose of the training is to make employees more proficient in their current positions despite the fact that the vast majority "trainees" have been performing their jobs for years with no complaints concerning their performance from the employer. About 60 workers have at least 30 years of service; another 164 employees have between 25 and 29 years of service, and another 63 workers have between 20 to 24 years of service.

Additionally, the workers do not obtain any certifications or licenses, which would enhance employment opportunities with other employers.

## I.  DOW CHEMICAL'S MANDATORY TRAINING PROGRAM

As set forth the attached "Skills Initiative Non-Compliances Agreement," all workers hired before May 13, 2003 are required to pass a "Foundational Skills Assessment" in the following six areas: 1) reading for information, 2) applied mathematics, 3) locating information, 4) teamwork, 5) applied technology, and 6) observation.

Dow Chemical requires each worker to take an initial test in each of these six areas. Employees are not paid for time spent testing; each test takes about two to three hours to complete. Once the employee's skill level has been determined in each area, the employee is "expected" to train without pay in order to advance at least two skill levels per year until the employee has achieved the required skill level in all six skill categories. Each employee must achieve a skill level of five in two of the categories (locating information and teamwork) and a skill level of six in the four other categories.

The course for each of the six foundational skills is 20 hours per week. This does not include time needed for study of course materials and test taking. All workers must pass the tests for site foundational skills 1 (reading for information, applied math, and locating information) and site foundational skills 2 (teamwork, applied technology, and observation). In addition, process operators must pass a process operators skills test. As noted above, of approximately 958 hourly workers, only 15 workers passed SFS 1, SFS 2, and the process operator skills tests since 2003, and 68 workers have completed all six tests in SFS 1 and SFS 2.

## II.  IN ACCORDANCE WITH DOL STANDARDS, THE MANDATORY TRAINING SHOULD BE COUNTED AS WORKING TIME

Generally, time spent attending employer-sponsored training programs is compensable. DOL regulations provides that time spent in training programs, such as Dow Chemical's program, is to be counted as working time unless the activity meets all four of the following criteria (29 CFR 285.27):

21

Attendance at lectures, meetings, training programs and similar activities need not be counted as working time if the following four criteria are met:

(a) Attendance is outside of the employee's regular working hours;
(b) Attendance is in fact voluntary;
(c) The course, lecture, or meeting is not directly related to the employee's job; and
(d) The employee does not perform any productive work during such attendance.

In this case, training must be compensated, because the training is **not** voluntary and the training is not for the purpose of enhancing employment opportunities; rather, Dow Chemical requires the training for retention of the positions held by the employees. The training is, thus, **"directly related"** to the employees' jobs.

*A. Mandatory Training Occurs Outside the Employee's Regular 40-Hour Work Week*

Dow Chemical requires its hourly workers to attend the training courses and to study course materials outside of the employee's working hours. Employees work at least 40-hour weeks, and during the same work weeks, they are required to train without any additional compensation.

*B. Attendance is Not Voluntary: Discipline is Imposed For Refusal to Participate in Skills Advancement And For Failure to Succeed*

Attendance at the course and tests is not voluntary. Dow Chemical discharged one employee with more than 25 years of service, Roy Maynor, for a refusal to participate in the training program. Other workers, including Ben Smith, have received suspensions for as long as four days for not passing the required tests. Dow Chemical has stated that the length of the suspensions will increase each year for all employees who have not passed the required tests.

Attached hereto (Attachment B) is an **incomplete** list of workers who have been disciplined for failure to successfully complete the skills assessments or refusal to participate in the program. IUOE Local 564 is attempting to obtain from the employer a complete list of workers who have been disciplined for either refusal to participate or failure to advance in skill levels.[2] Attached hereto (Attachment C) is a complete list of the 583 employees who, as of June 1, 2006, lost their rights to bid on jobs at Dow Chemical as a result of not meeting the required standards. The loss of bidding rights is a very serious form of discipline, since seniority determines the right to obtain the most desirable jobs and shifts.

There is no question that the employees' present working conditions or continuance of employment is adversely affected by non-attendance. 29 CFR 785.28. The disciplinary letters state that any "future policy or rule violations or workplace misconduct will lead to further discipline, up to and including termination of your employment."

A comparison of the names of the employees who received disciplinary letters from Dow Chemical to the attached alphabetized seniority list (Attachment D) shows that Dow Chemical

---

[2] Once the IUOE receives the information requested, we will send a follow up letter to your office providing you with additional information.

has sent such letters to very long-term employees.[3] Indeed, based on the evidence that IUOE Local 564 has been able to obtain thus far, of the 39 current employees who have received a letter of discipline, all but five had at least 16 years of service:[4] eight workers have 30 years of service,[5] ten workers have 26 to 29 years of service,[6] two workers have 23 or 24 years of service,[7] and 14 workers have 16 to 19 years of service.[8]

### C. Dow Chemical Views the Training As Directly Related to the Job And The Training Is Not Designed to Train Workers for Higher Skilled or Better Paying Work

In accordance with DOL regulations "training is directly related to the employee's job if it is designed to make the employee handle his job more effectively as distinguished from training him for another job, or to a new or additional skill." 29 CFR 785.29. Dow Chemical views such training as necessary for long-term employees to perform and retain their current positions. The 15 workers who passed SFS 1, SFS 2, and the process operator skills tests since 2003, and 68 who workers completed all six tests in SFS 1 and SFS 2 have not received promotions.

The employees are required to train in order to retain their current positions despite the fact that the long-term employees have demonstrated their ability to perform their jobs without the training. Ironically, the discipline imposed on four employees (David A. Shepard, Marty Martinez, Bobby Scott, and Ben Smith) who failed to pass the required tests was a loss of performance awards earned for excellent performance on the job. Thus, it is clear that the training and testing are not needed for the performance of the jobs held by the employees even though Dow Chemical treats the training as though it is directly related to the job. The employees suffer the economic consequences of mandatory training without pay, but they are not offered the opportunity to train for higher skilled and better paying work.

### D. The Workers Do Not Perform Any Productive Work During Training Time

---

[3] Ten employees who received disciplinary letters are no longer employed by Dow Chemical: Charles Aden, Kevin Brooks, Mark A. Calcote, John Macias, Robert D. Mickle, Jr., Otto Morse, Gary Owens, Johnny Payne (retired on June 30, 2005), Robert Tipp, and Sam Thompson.

[4] Of those five employees, all have at least six years of service: Don Area (10/12/92), Bruce Brannan (3/13/00), Jeff Duke (2/28/00), David A. Shepard (2/28/00)(one-day suspension and loss of performance award), and Paul Zenker (2/28/00).

[5] Donald W. Cranfill (9/3/74), R.L. Cranfill (2/17/76), Gerry Flores (6/10/74), Marty Martinez (9/18/74)(four-day suspension and loss of performance award), Robert Moreno (7/31/74), Frank Richardson (11/8/76), Daniel Tolbert (8/30/73), and Johnny Tutman (10/1/74).

[6] Robert Duke (1/30/80), Farrell Faul (4/9/79), Holly Hollingsworth (3/21/77), Bob Ed Johnson (8/3/81), Ronald A. Montgomery (5/14/79), Lee Muguerza (7/30/79), Bobby Scott (3/17/80)(one-day suspension and loss of performance award), Ben Smith (4/15/80)(one-day suspension and loss of performance award), Jeff Speer (12/05/79), and M.L. Yanez (5/27/80).

[7] Alec D. Anderson (3/5/84), and Ray Kilsby (6/20/83).

[8] William Baker (9/21/87), Terri Bones (11/23/87), Clifton Butler (11/30/87), Rodger D. Cole (4/4/88), Paul Cooper (2/22/88), D.J. Grahmann (4/4/88), Tim Grigsby (10/23/89), Randy Harding (9/12/88), David Hancock (11/28/88), Rudy Herrera (2/1/88), Malcolm Means (9/11/89), Tim Punch (11/28/88), Norman Tucker (11/30/87), and Jim Weaver (4/30/90).

As noted above, the training and testing takes place at an off-site location, Brazosport College. No productive work takes occur at such time.

### III. THE COLLECTIVE BARGAINING AGREEMENT DOES NOT NULLIFY STATUTORY RIGHTS

Dow Chemical cannot defend its failure to compensate employees for mandatory training based upon its interpretation of the collective bargaining agreement between Dow Chemical and IUOE Local 564. The hourly workers are entitled to compensation under the Fair Labor Standards Act regardless of Dow Chemical's interpretation of the terms and conditions in the collective bargaining agreement. The Supreme Court has made clear that FLSA rights to minimum wage and overtime pay may not be waived by collective bargaining agreements (*Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 740 (1981)(citations omitted)):

> This Court's decisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual's employee's right to a minimum wage and to overtime pay under the Act. Thus, we have held that FLSA rights cannot be abridged by contract or otherwise waived because this would "nullify the purposes" of the statute and thwart the legislative policies it was designed to effectuate. Moreover, we have held that congressionally granted FLSA rights take precedence over conflicting provisions in a collectively bargained compensation arrangement.

Based on the foregoing, IUOE Local 564 requests that the Department of Labor investigate Dow Chemical's failure to compensate workers for time spent in taking courses and tests and studying course materials.

Sincerely,

*[signature]*

Charles Singletary
Business Manager

Attachments

cc: Chad Frazier, Assistant District Director

# Attachment "B"

**Discipline**
*(incomplete)*

3/3/4

To: Terri Bones, U089497

Cc: Danny Kier, Local 564 Union Steward
Personnel File

Date: March 3, 2006

Re: Written Letter

*Personal and Confidential*

Dear Terri:

The purpose of this written letter is to address your failure to meet the Skills Initiative annual requirement, described in Article XXXIV, under "Intent of this Article" and Section 1 – Site Foundational Skills. An employee is expected to move up at least 2 skill levels per year or to attempt to reach this requirement until the employee has achieved the required level in all the Skill Categories. You have not met this requirement.

**EXPECTATIONS:**
1. You must reach or make an attempt to reach the requirements agreed to in the collective bargaining agreement. Further disciplinary action may result if the above expectation is not met by December 31, 2006. Also, as defined in the collective bargaining agreement, Article XVII, Seniority, Section 11 – Filling Vacancies or New Jobs, 4th bullet, page 30; "After June 1, 2006, employees must meet minimum Foundational Skills category profile as described in the Skills initiative, Article XXXIV to post on any job."

This written letter notifies you of a serious performance deficiency. We expect you to modify your behavior immediately to comply fully with the skills initiative requirements described above. Any future policy or rule violations or workplace misconduct will lead to further discipline, up to and including termination of your employment. This written letter will be kept in your personnel file for three years from the date of issuance of the letter. If you have a further incident during that three-year timeframe, it will remain in your file for three years from the date of the last disciplinary action.

We value the contributions you bring to the team and we hope you will complete the requirements.

Respectfully,

Tim O'Neal
Production Leader

62

DOW RESTRICTED - For internal use only