THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROY MAYNOR, KENNETH NUGENT, ET AL., | § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 3:07-CV-00504 (JURY) |
| v. | § § | |
| THE DOW CHEMICAL COMPANY | § § | COLLECTIVE ACTION |
| Defendant. | § § | |

## JOINT MOTION FOR COURT APPROVAL OF SETTLEMENT INCLUDING ATTORNEYS' FEES

TO THE HONORABLE JUDGE LEE H. ROSENTHAL:

Allen Ahrens, Jr. ("Ahrens"), Victor Alejos ("Alejos"), Richard Anderle ("Anderle"), Alec Anderson ("Anderson"), Sharita Barnett ("Barnett"), Gerald Bell ("Bell"), Terry Benge ("Benge"), Stuart Blackstock ("Blackstock"), Marcus Bonner ("Bonner"), Raymond Booker ("Booker"), Donald Bratcher ("Bratcher"), Lloyd Briggs ("Briggs"), Ed Brown, III ("E. Brown"), Roy Brown ("Brown"), Clifton Butler ("Butler"), George Carrales ("Carrales"), Kevin Carroll ("Carroll"), Enrique Casiano ("Casiano"), L.J. Cortemelia ("Cortmelia"), Ernesto Casas ("Casas"), Richard Castillo ("Castillo"), Roosevelt Causey ("Causey"), Nancy Coburn ("Coburn"), Gerald Condict ("Condict"), David Cope ("Cope"), Scott Crosson ("Crosson"), Larry Cunningham ("Cunningham"), Dean Darnell ("Darnell"), Timothy Davidson ("Davidson"), Andy DeLeon, ("DeLeon"), Walter Dean ("Dean"), Robert Duke ("Duke"), Donna Eidlebach ("Eidlebach"), Kerry Erwin, Sr. ("Erwin"), Bruce Eudy ("Eudy"), Johnny Ferguson ("Ferguson"), Alfredo Flores ("Flores"),

Mario Gallegos ("Gallegos"), Thomas Garcia, IV ("Garcia"), Herberto Garza ("Garza"), Jesse Garza ("Garza"), Randall Gilbert ("Gilbert"), Kenneth Glass ("Glass"), George Gray ("Gray"), Brenda Gegurek ("Gregurek"), Blitz Halfaday ("Halfaday"), Kenneth Hall ("Hall"), Johnny Hamlet ("Hamlet"), Juan Handy ("Handy"), Michael Haney ("Haney"), Stephen Harris ("Harris"), Gregory Haston ("Haston"), Timothy Hatcher ("Hatcher"), John Haynes ("Haynes"), Gibbs Hightower ("Hightower"), Carole Hill ("Hill"), Larry Hoehne ("Hoehne"), Mitcheal Horn ("Horn"), Leon Horky ("Horky"), Melvin Hudnall ("Hudnall"), Donald Huntsman ("Huntsman"), Terry Jackson ("Jackson"), Joe Jasso ("Jasso"), John Kesee ("Kesee"), Christopher Kozak ("Kozak"), Harvey Krejci ("Krejci"), Jerry Kreneck ("Kreneck"), Patrick Lawson ("Lawson"), Melanie LeBoueff ("LeBoueff"), Donald Lowry ("Lowry"), Rogelio Luna ("Luna"), W.T. Monasco ("Monasco"), Danny Mann ("Mann"), Tony Martin ("Martin"), Martin Martinez ("Martinez"), Karen McBride ("McBride"), Myron McReynolds ("McReynolds"), Rolf Miller ("Miller"), Frederick Mims ("Mims"), Jose Molina ("Molina"), Chester Monaghan ("Monaghan"), Jesse Mondragon ("Mondragon"), Anthony Moody ("Moody"), Robert Moreno ("Moreno"), Rudy Moreno ("R. Moreno"), Rick Morphew ("Morphew"), Darwin Mueller ("Mueller"), Lee Muguerza ("Muguerza"), Hipolito Nieto ("Nieto"), John Olson ("Olson"), Kieth Peralta ("Peralta"), Gary Phillips ("Phillips"), Bryan Porter ("Porter"), Trancit Rodriguez ("Rodriguez"), Jerry Rotureau ("Rotureau"), Robert Roy ("Roy"), Roy Runnels ("Runnels"), Dexter Sargent

("Sargent"), Eugene Scott, Jr. ("Scott"), Stephen Sellers ("Sellers"), Christopher Sharpe ("Sharpe"), David Shepard ("Shepard"), John Spillars ("Spillars"), Donnie Thomas ("Thomas"), Charlie Thompson ("Thompson"), Mark Thompson ("M. Thompson"), Michael Thornberg ("Thornberg"), Cary Tolbert ("Tolbert"), Vanessa Tosten ("Tosten"), Johnny Tutman ("Tutman"), Homar Villarreal ("Villarreal"), Michael Vincent ("Vincent"), Johnny Voss ("Voss"), Archie Walker ("Walker"), Tracey West ("West"), Larry Williams ("Williams"), Terry Williams ("T. Williams"), Timothy Williams ("Tim Williams"), Steven Willis ("Willis"), Arthur Woodard ("Woodard"), Cuney Woodard, Jr. ("C. Woodard"), and Billy Zahn ("Zahn") (collectively, the "Plaintiffs") and Defendant The Dow Chemical Company ("Dow") (collectively, the "Parties") file this Joint Motion for Approval of Settlement Including Attorneys' Fees as follows:

## I. Procedural Background

1. This collective action under the Fair Labor Standards Act, 29 U.S.C. Section 216(b)(2010), was originally filed by Plaintiff Roy Maynor in October of 2007. A conditional class was certified by the Court on May 8, 2008. Subsequently, a total of one hundred thirty-nine (139) consents to join the collective action were filed with the Court.

2. Written discovery was propounded and answered by each Plaintiff individually. Additionally, the amount of overtime hours worked by each Plaintiff was determined from a comprehensive review

of data provided by Brazosport College, by Dow and by the individual Plaintiffs. Twelve of the Plaintiffs were deposed. At the conclusion of discovery, fifteen (15) consent plaintiffs were dismissed from the lawsuit for various reasons with one hundred twenty-five Plaintiffs remaining in the lawsuit.

3. Additionally, several significant legal issues were briefed by the Parties. The Plaintiffs filed a Motion for Summary Judgment as to the compensability of their time spent training and testing in Dow's Site Foundational Skills Program. Dow filed a Motion to Decertify the Conditional Class. The appropriate responses and replies were filed by the Parties. Following the Court's Memoranda and Order in November of 2009, several factual disputes relating to liability and damages remained for trial.

4. Finally, the present settlement agreement was reached following two (2) mediation sessions and lengthy negotiations between experienced counsel. Of note, each of the Plaintiffs identified in this motion have expressly agreed to the terms of the settlement now before the Court for approval.

II. Terms And Conditions Of Settlement

5. Dow originally agreed to pay the sum of $500,000.00 to resolve all unpaid overtime claims and associated attorneys' fees and costs contingent on a one hundred percent (100%) acceptance by the Plaintiff class. Following extensive communications between Plaintiffs' counsel and the Plaintiff class, one hundred twenty-two (122) Plaintiffs (the "Settling Plaintiffs") agreed to settle their

claims. Thereafter, Dow agreed to settle with the Settling Plaintiffs based on a proportional reduction in the original contingent settlement offer reflecting the overtime claims of the three (3) non-settling Plaintiffs and the attorneys' fees attributable to those claims, as well as the attorneys' fees attributable to the work done in connection with Maynor's retaliation claim. As to the Settling Plaintiffs, each individual Plaintiff's settlement amount represents their proportionate share of the settlement proceeds based on the number of overtime hours claimed as worked.[1] Attached hereto as Exhibit "A" is a spreadsheet reflecting Plaintiffs' allegations as to: 1) the number of hours claimed as worked by each Plaintiff; 2) each Plaintiff's regular and overtime rates of pay; 3) the maximum possible amount of each Plaintiff's unpaid overtime wages; 4) the amount of each Plaintiff's current settlement offer; and 5) the amount of prior payments received by each Plaintiff following the Department of Labor investigation that could be offset from a damages award at trial. Dow continues to deny Plaintiffs' allegations and expressly denies any liability in this matter, however, has agreed to settle this matter on the terms expressed herein for the reasons stated herein.

6. Additionally, Exhibit "A" reflects the distribution of

---

[1] Two Plaintiffs claimed more than one thousand (1000) hours of self study hours worked. However, for purposes of the settlement distribution, the amount of self study hours claimed as hours worked was capped at no more than one thousand (1000) hours per Plaintiff.

attorneys' fees attributed to each Plaintiff based on their proportionate share of the settlement. Essentially, one third or thirty-three percent (33%) of the settlement proceeds has been set aside for attorneys' fees. Costs in the amount of approximately $20,000.00 have also been reimbursed to the law firm of Warren & Siurek, L.L.P. from the settlement.

7. All settlement funds and attorneys' fees relative to the three (3) Plaintiffs who have declined Dow's settlement offer are excluded from the settlement. As such, the amount of $22,951.58 in settlement funds and the amount of $12,207.08 in attorneys' fees shall be retained by Dow. Accordingly, the remaining amount paid by Dow to resolve the one hundred twenty-two (122) claims is $464,841.34.

8. Nevertheless, one hundred twenty-two (122) Plaintiffs and Dow ask the Court to approve the settlement and the amount of attorneys' fees as a fair and reasonable compromise of a <u>bona fide</u> dispute under the FLSA.

### III. <u>Applicable Legal Standards</u>

9. In <u>Quintanilla v. A & R Demolition, Inc.</u>, No. H-04-1965, 2008 U.S. Dist. LEXIS 37449 (S.D. Tex. May 7, 2008), the Court outlined the factors to be considered in determining whether a class action settlement should be approved as fair and reasonable. Specifically, district courts should consider 1) any evidence that the settlement was obtained by fraud or collusion; 2) the complexity, expense, and likely duration of the litigation; 3) the

stage of the litigation and available discovery; 4) the probability of plaintiffs prevailing on the merits; 5) the range of possible recovery and certainty of damages; and 6) the opinions of class counsel, class representatives and absent class members. Quintanilla, 2008 U.S. Dist. LEXIS 37449 at 3. The application of these factors to this settlement supports an approval of the settlement by the Court.

### A. No Evidence Of Fraud

10. Here, as in Quintanilla, the parties were represented by experienced counsel and the settlement was reached through arms-length negotiations after mediation with a neutral. These circumstances support a finding that the settlement is free of fraud and collusion. Quintanilla, 2008 U.S. Dist. LEXIS 37449 at 4 citing Batchelder v. Kerr-McGee Corp., 246 F. Supp. 2d 525, 527 (N.D. Miss. 2003).

### B. Complex And Protracted Litigation

11. If this case proceeded to trial, the class would face extensive costs and delays. First, a number of legal and factual issues have been vigorously contested. Several fact issues remain for trial following the Court's ruling on Plaintiffs' Motion for Summary Judgment. Moreover, assuming a finding of liability, one hundred twenty-five (125) Plaintiffs would have to offer some proof of their damages. There is also the possibility of appeals arising from any of the liability or damages findings at trial. In sum, the complexity of the legal and factual issues and the likelihood

of protracted litigation could increase the Plaintiffs' costs and delay their recovery.

### C. The Parties Can Assess The Benefits Of Settlement

12. The Parties have engaged in extensive discovery and the information obtained has been analyzed in detail. The Parties have briefed the factual and legal disputes and are ready to begin trial preparation. As a result, the Parties have thoroughly assessed the merits of their claims and defenses. Accordingly, the Parties are in a position to assess the benefits of the proposed settlement.

### D. Possibility Of Plaintiffs Not Prevailing On The Merits

13. During the course of this litigation, Dow has consistently and vigorously pursued numerous defenses to the Plaintiffs' claims. By way of example, Dow contends that the Plaintiffs' study time was not compensable because the study material was not directly related to the Plaintiffs' work. Dow also disputes the number of hours claimed as worked by the Plaintiffs. It is possible that Dow could prevail on liability. It is also possible that Dow could significantly reduce the amount of damages claimed by the Plaintiffs. As a result, the Plaintiffs' recovery is uncertain. This ambiguity is a factor in support of the settlement.

### E. Range Of Possible Recovery

14. Prevailing Plaintiffs are entitled to unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA. See 29 U.S.C. Section 216(b)(2010). The proposed

settlement before the Court provides the Plaintiffs with compensation for their training time, including training time that is documented by the college and training time that is undocumented and referred to as "self study time," for a three (3) year period. Additionally, the value of the settlement is enhanced because Dow might otherwise be entitled to an offset of prior payments made to the Plaintiffs from any recovery they would receive at trial. Considering the risks of trial, the related costs and delays and the amount of offset to be claimed by Dow, the Parties believe that the settlement amount is fair and reasonable.

### F. Opinions Of Class Counsel And Class Members

15. This proposed settlement is the product of extensive arms-length negotiations conducted after extensive discovery and legal analysis by counsel for the Parties. Negotiations included numerous meetings and telephone conferences and two (2) full days of mediation. Counsel for the Parties endorse the settlement.

16. Additionally, one hundred and twenty-two (122) Plaintiffs have expressly accepted the settlement. The three (3) Plaintiffs who have declined the settlement offer have contemporaneously requested to be severed from this action and proceed to trial. As such, there are no objections to the approval of this settlement. Nevertheless, and even if there were a small number of objections received, that fact would be indicative of the adequacy of the settlement. Quintanilla, 2008 U.S. Dist. LEXIS 37449 at 6 citing Wal-Mart Stores, Inc. v. VISA U.S.A., Inc., 396 F.3d 96, 118 (2d

Cir. 2005). Here, as in Quintanilla, there is unanimous support for the settlement.

17. Declarations from five (5) Plaintiffs who have accepted the settlement offer are attached as Exhibits "D" through "H." Essentially, the Plaintiffs express their understanding of their estimated damages and the value of their settlement offer. Nevertheless, the Plaintiffs state their preference for the certainty of settlement versus the risk and expense of trial.

18. Finally, the three (3) remaining Plaintiffs shall proceed to trial with their claims and suffer no prejudice as a result of the settlement.

19. In sum, counsel and all of the one hundred twenty-two (122) Plaintiffs subject to the settlement have agreed to and approved the terms of the settlement.

### IV. Attorneys' Fees And Costs

20. In FLSA collective actions, the Court must determine the reasonableness of the attorneys' fees to be paid as part of the fairness determination. Quintanilla, 2008 U.S. Dist. LEXIS 37449 at 7 citing Strong v. BellSouth Telecommns, 137 F.3d 844, 849-850 (5th Cir. 1998). Under the terms of the settlement, Plaintiffs' counsel will receive one third or thirty-three percent (33%) of the settlement proceeds as attorneys' fees. Excluding the attorneys' fees attributed to the three (3) Plaintiffs who have declined the settlement, counsel shall receive the amount of $154,442.92 as attorneys' fees. The sum of $20,000.00 is designated as

reimbursement for costs and expenses.

21. Court's use the lodestar method to assess attorneys' fees in class action cases. Quintanilla, 2008 U.S. Dist. LEXIS 37449 at 7. First, the district court must determine the reasonable number of hours expended on the litigation and the reasonable hourly rate for the participating attorney. Quintanilla, 2008 U.S. Dist. LEXIS 37449 at 7. The lodestar is then determined by multiplying the number of hours reasonably expended by the reasonable hourly rate. Quintanilla, 2008 U.S. Dist. LEXIS 37449 at 7.

22. The prevailing market rate for similar services by similarly trained and experienced lawyers in the relevant legal community is the basis for determining a reasonable hourly rate. Quintanilla, 2008 U.S. Dist. LEXIS 37449 at 7. In addition to evidence provided by counsel, the district court may use its own expertise and judgment to make an appropriate independent assessment of the value of an attorneys' services. Quintanilla, 2008 U.S. Dist. LEXIS 37449 at 8. Applied here, the evidence demonstrates that the hourly rate for the fees sought by counsel is $143.40 per hour.

A. Reasonable Hourly Rate

23. The Plaintiffs ask the Court to find that the hourly rate sought by the attorneys is reasonable. Attached hereto as Exhibit "B" is the Declaration of Mark Siurek ("Siurek") and attached billing records for the law firm of Warren & Siurek, L.L.P. (the

"Firm"). The Firm billed at a rate of $340.00 per hour for the services of Siurek as lead counsel, $325.00 per hour for the services of associate counsel and $175.00 per hour for paralegal services. See Exhibit "B." In total, the attorneys and paralegals at the Firm have expended over one thousand four hundred forty (1440) hours of time on this case for a total of $420,125.89 in accrued attorneys' fees. See Exhibit "B."

24. However, from the total of $420,125.89, the Firm excluded from consideration all time spent in communications with prospective class members who did not join the collective action for a total of $8,137.50. Additionally, the Firm excluded all time spent in connection with counsel's withdrawal from representation of Cornell Porter for a total of $3,293.75. The Firm also excluded all attorneys' fees associated with the overtime claims of the three (3) remaining Plaintiffs for a total of $12,207.08. Finally, the Firm excluded attorneys' fees related to the retaliation claim of Plaintiff Roy Maynor in the amount of $11,268.75. In sum, the Firm has reduced the amount of its billable attorneys' fees from $420,125.89 to $385,218.81 for a total of one thousand three hundred sixty-three (1363) hours of attorney and paralegal time.

25. Nevertheless, the Firm has agreed to accept the amount of $154,442.92 as attorneys' fees in order to facilitate the proposed settlement. Excluding all hours of paralegal time from reimbursement completely, the average hourly rate for attorneys sought by the Firm in connection with this settlement is $143.40.

26. This hourly rate is far below the prevailing market rates in the Houston legal community for similar services by lawyers of comparable skills, experience and reputation. <u>See</u> Exhibit "B." <u>See also</u> Exhibit "C," the State Bar of Texas Hourly Rates Report. The State Bar reports that the median hourly rates for attorneys practicing in the area of Labor and Employment is $275.00 per hour. <u>See</u> Exhibit "C."

27. Further, the Court has previously found that hourly rates between $205.00 and $275.00 in a FLSA case were consistent with the prevailing market rates for attorneys with comparable experience. <u>See</u> <u>Prater v. Commerce Equities Management Company, Inc.</u>, No. H-07-2349, 2008 U.S. Dist. LEXIS 98795 (S.D. Tex. December 8, 2008); <u>Hilton v. Executive Self Storage Associates, Inc.</u>, No. H-06-2744, 2009 U.S. Dist. LEXIS 51417 (S.D. Tex. June 18, 2009). Accordingly, the Plaintiffs ask the Court to find that the hourly rate of $143.40 is a reasonable hourly rate under the circumstances of this case.

B. <u>Reasonable Number Of Hours</u>

28. Additionally, the Plaintiffs ask the Court to find that the number of compensable hours expended in this case was reasonable. This case has been pending for over two (2) years. Counsel represents one hundred twenty-five (125) clients. The Parties have engaged in extensive discovery and motion practice. For example, approximately three hundred (300) hours have been expended conducting written discovery and depositions. All

available information, including a database produced by Brazosport College, has been analyzed to complete an individualized damage assessment for each Plaintiff.

29. With respect to the motion practice, almost two hundred (200) hours were expended in connection with briefing the legal issues related to the Plaintiffs' Motion To Certify The Conditional Class, Plaintiffs' Motion For Summary Judgment and Plaintiffs' Response to Defendant's Motion To Decertify. Finally, the settlement discussions have been protracted requiring a significant amount of attorney time.

30. As stated above, the Plaintiffs' attorneys have spent over one thousand one hundred thirty-three (1133) cumulative hours on this case exclusive of paralegal time. Moreover, the attorneys have reduced the number of their compensable hours in the case to one thousand seventy-seven (1077). As such, Plaintiffs ask the Court to find that the number of compensable hours expended on the case was reasonable.

### C. Costs

31. The Firm asks the Court to approve the reimbursement of its expenses in the amount of $20,000.00. Attached to Exhibit "B" is a copy of the Firm's record of expenses associated with this case.

### V. Conclusion

32. In sum, the Parties ask the Court to find that the amount to be paid to the Plaintiffs and the amount of attorneys' fees

provided are fair and reasonable. The Parties ask the Court to approve the settlement as a fair and reasonable compromise of a <u>bona fide</u> dispute under the FLSA.

33. Finally and subject to the Court's approval, the Parties request that the claims of the Plaintiffs who have agreed to settle be dismissed with prejudice to refiling of same with all costs incurred taxed against the Party incurring such costs.

Respectfully submitted,

*/s/ Mark Siurek*

Mark Siurek
TBA# 18447900
Federal ID# 9417
3334 Richmond Ave, Suite 100
Houston, Texas 77098
713-522-0066 (telephone)
713-522-9977 (fax)
Msiurek@warrensiurek.com

ATTORNEY-IN CHARGE FOR PLAINTIFFS

OF COUNSEL:

WARREN & SIUREK, L.L.P
Patricia Haylon
TBA #09281925
Federal ID#13941
3334 Richmond Ave, Suite 100
Houston, Texas 77098
713-522-0066 (telephone)
713-522-9977 (fax)
thaylon@warrensiurek.com

*Nancy Patterson /by permiss.*

Nancy Patterson
TBA# 15603520
Federal ID# 10221
1000 Louisiana, Suite 4200
Houston, Texas 77002
713-890-5000 (telephone)
713-890-5001 (fax)
npatterson@morganlewis.com

ATTORNEY-IN-CHARGE FOR DEFENDANTS

OF COUNSEL:

Morgan, Lewis & Bockius, LLP
A. John Harper, III
TBA# 24032392
Federal ID# 577124
1000 Louisiana, Suite 4200
Houston, Texas 77002
713-890-5000 (telephone)
713-890-5001 (fax)
jharper@morganlewis.com